DONALD PRICE, JR., EMPLOYEE, PLAINTIFF v. PIGGY PALACE D/B/A HANNAH'S BBQ, EMPLOYER, ST. PAUL TRAVELERS, CARRIER, DEFENDANTS

No. COA09-981

(Filed 20 July 2010)

### 1. Workers' Compensation— medical compensation—travel expenses incurred by parents

The Industrial Commission did not err in a workers' compensation case by awarding plaintiff medical compensation for travel expenses incurred by his parents. The evidence established that plaintiff's mother provided critical physical and psychological care to plaintiff during his treatment and rehabilitation in the hospital, in addition to emotional support. Workers' Compensation Rule 407(6) does not limit the party incurring the travel expenses,

but instead requires reimbursement for travel when it is medically necessary.

**2. Findings of fact—conclusions of law**

The Industrial Commission's award of $5,000 in attorney fees under N.C.G.S. § 97-88-1 to plaintiff in a workers' compensation case was remanded to the full Commission for proper findings of fact and conclusions of law.

Appeal by Defendants from Opinion and Award of the North Carolina Industrial Commission filed 26 May 2009. Heard in the Court of Appeals 28 January 2010.

*Randy D. Duncan for Plaintiff-Appellee.*

*Mullen Holland & Cooper P.A., by J. Reid McGraw and Gerald L. Liska, for Defendants-Appellants.*

STEPHENS, Judge.

## I. Facts

Plaintiff Donald Price, Jr. was a 20-year-old[1] male who began working as a cook for Defendant Hannah's BBQ on 29 December 2004. Plaintiff was working in that capacity on 16 July 2006 when a co-worker slipped and fell, spilling approximately three gallons of hot grease onto Plaintiff. As a result, Plaintiff suffered burns to his head, left arm, and legs.

Plaintiff was immediately taken to Caldwell Memorial Hospital. Due to the extent of his burns, Plaintiff was transferred to North Carolina Baptist Hospital's trauma unit for further assessment and treatment. Defendants admitted that the claim was compensable pursuant to a North Carolina Industrial Commission Form 60 filed 19 July 2006.

On 27 July 2006, Plaintiff underwent surgery to attach skin grafts to Plaintiff's right foot. Plaintiff was discharged from Baptist Hospital on 28 July 2006. Dr. James H. Holmes of Baptist Hospital saw Plaintiff for a follow-up evaluation on 7 August 2006 and noted that Plaintiff's burns had completely healed and that the skin had re-epithelized without evidence of hypertrophic scarring. Dr. Holmes also noted that the skin graft on Plaintiff's right foot was a "100% graft take."

---

1. Plaintiff was 20 years old at the time of his testimony.

Plaintiff was released to return to work with the restrictions that he limit sun exposure to his healed scars and limit thermal heat exposure. According to Plaintiff, as of 11 December 2006, none of the grafted or healed skin had broken and the hypertrophic scars had healed.

Plaintiff returned to Baptist Hospital on 2 April 2007 complaining of continued neuropathic pain in his right lower extremity. Dr. Joseph Molnar, a hand and burn specialist at Baptist Hospital, noted that Plaintiff's pain was resolving "somewhat" and that Plaintiff had begun administering scar massage therapy at home on his own.

Plaintiff was seen by Dr. Holmes at Baptist Hospital on 9 July 2007. Dr. Holmes noted that Plaintiff had developed hypertrophic scarring in healed as well as grafted areas of his skin and some pigmentation abnormalities in the burned areas. On that date, Plaintiff reported some focal pain on the edge of the skin graft on his lower leg. Plaintiff was scheduled to see Dr. Molnar later that day for the hypertrophic scarring and pigmentation abnormalities. Dr. Holmes indicated that Plaintiff "is not at maxim[um] medical improvement given the hypertrophic scarring and the pigmentation abnormalities." Although Dr. Holmes was pleased with Plaintiff's progress, he noted that

> the hypertrophic scar on the right Achilles and the pigmenta-tion changes need to be addressed by Dr. Molnar and we have come up with a plan. This will extend over the next 6-12 months. Once all options have been exhausted for the hypertrophic scar and the pigmentation changes, then we can address maxim[um] medical improvement.

After evaluating Plaintiff on 9 July 2007, Dr. Molnar recommended that Plaintiff undergo pulse dye laser treatment to help relieve the pain, itching, and appearance of Plaintiff's scars.

Plaintiff filed a Form 33 hearing request on 4 September 2007 alleging that Defendants had refused to provide the recommended laser surgery. By letter dated 7 September 2007, Dr. Molnar explained to Defendants the importance of proceeding with the pulse dye laser treatment. However, Defendants continued to refuse to provide the treatment. At Dr. Molnar's deposition in this case, taken on 14 March 2008, Dr. Molnar again stressed the importance of proceeding with the treatment to help Plaintiff with the pain, itching, and appearance of his scars. Defendants again refused to provide the treatment.

The matter came on for hearing on 25 June 2008 before Deputy Commissioner James C. Gillen. Two issues before Deputy Commissioner Gillen were (1) whether the recommended laser treatment was medically necessary and (2) whether Plaintiff was entitled to reimbursement for medical travel expenses incurred by his parents as a result of their visiting Plaintiff in the hospital.

On 21 August 2008, Deputy Commissioner Gillen entered an Opinion and Award concluding, *inter alia*, that Defendants shall pay for Plaintiff's laser surgery and for Plaintiff's parents' travel expenses to and from the hospital. Additionally, Deputy Commissioner Gillen ordered Defendants to pay $10,000 for serious bodily disfigurement to Plaintiff's lower extremities, pursuant to N.C. Gen. Stat. § 97-31(22). From this Opinion and Award, Defendants appealed to the Full Commission.

The Full Commission reviewed the case on 19 March 2009. By Opinion and Award entered 26 May 2009, the Full Commission affirmed Deputy Commissioner Gillen's Opinion and Award, ordering Defendants to pay for Plaintiff's laser treatment and for Plaintiff's parents' travel expenses. The Full Commission reversed the portion of the Opinion and Award awarding Plaintiff $10,000 for serious bodily disfigurement.[2] Additionally, the Full Commission awarded Plaintiff attorney's fees.

From the Opinion and Award of the Full Commission, Defendants appeal.

## II.  Discussion

### A.  Medical Expenses

[1] Defendants first contend that the Full Commission erred in awarding Plaintiff medical compensation for travel expenses incurred by Plaintiff's parents. Upon careful consideration and for the following reasons, we disagree.

The standard of appellate review of an opinion and award of the Industrial Commission "is limited to a determination of (1) whether

---

2. The Full Commission concluded that although Plaintiff "may be entitled to permanent partial disability compensation for his serious bodily disfigurement" in the future, "because the Full Commission has found [P]laintiff would benefit from laser surgery to address his scarring, the Commission deems it proper to hold in abeyance an award pursuant to N.C. Gen. Stat. § 97-31(22), until the laser surgery has been performed and until any applicable healing time has passed."

the Commission's findings of fact are supported by any competent evidence in the record, and (2) whether the Commission's findings justify its legal conclusions." *Aaron v. New Fortis Homes, Inc.*, 127 N.C. App. 711, 714, 493 S.E.2d 305, 306 (1997) (citation and quotation marks omitted). "The findings of fact by the Industrial Commission are conclusive on appeal, if there is any competent evidence to support them, and even if there is evidence that would support contrary findings." *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998). This Court's duty goes no further than to determine whether the record contains any evidence tending to support the findings of the Commission, and it does not have the authority to weigh the evidence and decide the issue on the basis of its weight. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). This Court reviews the Commission's conclusions of law *de novo*. *Lewis v. Craven Reg'l Med. Ctr.*, 122 N.C. App. 143, 149, 468 S.E.2d 269, 274 (1996).

Under N.C. Gen. Stat. § 97-25, "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25 (2007). "The term 'medical compensation' means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, *sick travel*, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . ." N.C. Gen. Stat. 97-2(19) (2007) (emphasis added).

Defendants contend that the following findings of fact are not based on competent evidence:

6. While [P]laintiff was being treated at Baptist Hospital, the medical staff taught [P]laintiff's mother how to change [P]laintiff's dressings and how to stretch the scars. Plaintiff's mother also assisted in bathing [P]laintiff and helped [P]laintiff through his physical therapy. Plaintiff's mother was at the hospital assisting every day from July 18 through 28, 2006. For example, [P]laintiff had extreme difficulty walking while he was in the hospital due to his injuries. It sometimes took [P]laintiff a full hour, with his mother's assistance, to walk down the hall. Plaintiff's mother provided necessary services to [P]laintiff through the recuperative and rehabilitative process. Plaintiff's father brought clothing and completed

other tasks every day to enable [P]laintiff's mother to spend time at the hospital.

. . . .

9. Plaintiff's parents incurred 18 round trips to Baptist Hospital at 163.74 miles per round trip. This is a total of 2,947.32 miles. All of these trips were medically necessary. The North Carolina Industrial Commission medical mileage reimbursement rate for that period of 2006 was $0.445 per mile. The mileage therefore has a reimbursement value of $1,311.56.

10. Plaintiff was released from the hospital earlier than he otherwise would have been because [P]laintiff's mother had been trained in how to change dressings and otherwise care for [P]laintiff. Furthermore, subsequent to his release, [D]efendants did not have to pay for nurses to be sent to [P]laintiff to provide services that [P]laintiff's mother was able to perform as a result of her attendance during [P]laintiff's hospital stay.

We conclude that the following evidence before the Commission provides ample support for the challenged findings:

Plaintiff was admitted to Baptist Hospital on 18 July 2006 and discharged on 28 July 2006. Plaintiff testified that either his mother, his father, or both of his parents were at the hospital each day. Plaintiff testified that every day he was put into a stainless steel bathtub or on a table where the dead skin was scrubbed off of his burns. It took two people to hold him down while his burns were scrubbed "[b]ecause the pain of it all and the fact that they're scrubbing nothing but rawness . . . ." He further testified that "when I was in the bathtub, [my mother] wasn't allowed in there, but when they put me on like a table . . . with like a little ledge on it, she got to come in there then and . . . help." His mother would "hold me . . . or she would either take a rag and wash and stuff."

Plaintiff was asked how often he would "have these baths," and Plaintiff responded, "[b]efore surgery, it would be once a day, and then they would still have to come out there and clean like all the wounds and everything. They would do that twice a day, and that's what mom would do."

On 27 July 2006, Plaintiff had skin graft surgery to his right ankle with a donor graft from his right thigh measuring approximately four inches by eight inches. Plaintiff testified that immediately after surgery,

they made me start learning how to walk because the skin had growed [sic] and my ankle wasn't at like a ninety degree [angle] . . . so therefore, I couldn't walk. And say, there's a lot of stretching and a lot of working of all the muscles and stretching and everything that they taught [my mother] to do, so that once I come home, she could do all that because I left there and still couldn't walk.

When asked how his mother helped in that process, Plaintiff testified that "she would have to support me as in—I mean because I had fell more than once, and, say, she would have to pretty much like—you know, you wrap my arm around her, and then she just pretty much carrying your weight when you can't walk."

Plaintiff was asked if there were other people in the hospital who could have helped him walk other than his mother. Plaintiff responded:

The doctor done it once, but then the doctor tells you that you got to do it two or three times a day and, you know, that's the reason they have—say, they showed my mom everything—how to clean all the wounds, how to, you know, help me stretch. They gave me all this stuff to stretch with and everything, so that when I come home—because they let me come home early—and they saying [sic] when I come home, they wouldn't have to send a doctor out there or nothing. My mom could take care of it all at that point.

Plaintiff's mother, Lynn Price, testified that she went to Baptist Hospital every day Plaintiff was in the hospital and cared for him "every minute of every day." She learned how to change all his dressings and did so two times a day, every day. She testified that she did this "[s]o I would learn how to do it correctly when we got home because a nurse couldn't be with him twenty-four/seven . . . ." She further testified that she assisted with "[b]athing, anything and everything he needed . . . ." Plaintiff "couldn't walk . . . until they done surgery. That's when they got him up and started walking him." Ms. Price would "just walk with him down the hall and back up, and that would sometimes take an hour . . . ." Sometimes she would assist him by "[h]olding on to [sic] his side, making sure he didn't fall over with the walker."

Ms. Price testified that she stayed with Plaintiff in the hospital "[t]wenty-four/seven. . . . What time I wasn't driving, my husband was driving, bringing me clothes . . . and providing me things to eat." Ms. Price also testified that she and her husband went "back and forth to

get clothes" but that she "didn't leave [the hospital] at all from the 26th on." She said she would not have been able to stay at the hospital had her husband not brought her clothes and other necessities. She further testified that Plaintiff was discharged early from the hospital and a nurse "only had to come one time" to visit Plaintiff after he left the hospital "because of me being able to do everything that the nurses did." Ms. Price and her husband made 18 round trips from their house to the hospital, totaling 2,947.32 miles.

Dr. Molnar was asked whether, in his opinion as a medical doctor, it is important for a patient to have support from his family while he is in the hospital. Dr. Molnar replied,

> Absolutely. Anyone who they're close to and that can give them support and you are dealing with a painful injury that is deforming to people. It's one of the most painful things that anyone can experience.
>
> . . . .
>
> So with the pain and with the emotional problems that come with dealing with the pain, the wound care, the need for surgery, . . . [o]ne likes to have the loved ones around. . . . I think the emotional support is necessary.

Dr. Molnar then acknowledged that, in his medical opinion, it is important to the process of recovery to have relatives with a patient at the hospital.

Contrary to Defendants' assertion that "the evidence in the record contains nothing more than general statements attesting to emotional benefit provided by family members[,]" the above-described evidence establishes that Plaintiff's mother provided critical physical and psychological care to Plaintiff during his treatment and rehabilitation in the hospital, in addition to emotional support. Furthermore, we disagree with Defendants' contention that the challenged findings of fact "contain misreadings of the relevant testimony from the Plaintiff, his mother, and Dr. Joseph A. Molnar," and conclude that the challenged findings of fact are wholly supported by the record evidence. Accordingly, the findings of fact are conclusive on appeal. *Grantham*, 127 N.C. App. at 534, 491 S.E.2d at 681.

Defendants further assert that the findings of fact do not support the conclusion of law that "[a]s part of [Plaintiff's medical] expenses, [P]laintiff is also entitled to reimbursement for his parents' medical

travel in the amount of $1,311.56." Specifically, Defendants assert that "[t]he presence of Plaintiff's parents was not medically necessary to the treatment of Plaintiff's condition[.]" We disagree.

Defendants do not contest that Plaintiff underwent the following treatment and rehabilitation during his 10-day stay in the hospital: Plaintiff was put into a stainless steel bathtub or placed on a table and the dead skin was scrubbed off of his burns. This took place once a day before surgery and twice a day after surgery. Due to the intense pain, two individuals had to hold Plaintiff down while his burns were scrubbed. The dressings on Plaintiff's wounds were also changed twice a day. On 27 July 2006, Plaintiff underwent skin graft surgery. Immediately after surgery, Plaintiff was required to walk in order to increase the range of motion in his ankle. Plaintiff also had to stretch and work his muscles on a daily basis.

Moreover, the uncontradicted testimony of Plaintiff and Plaintiff's mother establishes that Plaintiff's mother participated in Plaintiff's treatment and rehabilitation as follows: When Plaintiff was placed on the ledge for his burns to be scrubbed, his mother would hold him down or take a cloth and wash his wounds. Plaintiff's mother learned how to change the dressings on Plaintiff's wounds, and did so twice a day. Plaintiff's mother helped him start walking after his surgery and helped him stretch and work his muscles both in the hospital and after he was released.

Defendants do not contest that this treatment and rehabilitation effected a cure, gave relief, or tended to lessen the period of Plaintiff's disability. N.C. Gen. Stat. § 97-2(19). Instead, Defendants argue that because "there were doctors, nurses and physical therapists assisting [Plaintiff] during his stay[,]" the care provided by Plaintiff's mother was not medically necessary since those professionals could have provided the care. Defendants fail to persuade us that Plaintiff's treatment and rehabilitation would be considered medically necessary had it been provided by a doctor, nurse, or physical therapist, but not when it was provided by Plaintiff's mother. Accordingly, this argument is rejected.

Defendants further contend that there was "no medical testimony" to support the conclusion that Plaintiff's parents' presence was medically necessary. Furthermore, Defendants argue that any benefit derived from treatment "must be medical, as opposed to emotional or spiritual, and must be specific to a cure o[r] lessening of a disability." We disagree.

PRICE v. PIGGY PALACE

[205 N.C. App. 381 (2010)]

The Workers' Compensation Act provides three alternate grounds for medical treatment at the employer's expense: (1) to effect a cure, (2) to give relief, or (3) to lessen the period of disability. Thus, awards for medical expenses for treatment are appropriate "even if those treatments will not lessen the period of disability as long as they are required to 'effect a cure' or 'give relief.' " *Little v. Penn Ventilator Co.*, 317 N.C. 206, 213, 345 S.E.2d 204, 209 (1986). Moreover, in *Little*, the North Carolina Supreme Court concluded that the "psychological and emotional benefits which flow[ed] from monitoring the employee's [medical] condition constitute[d] 'relief' as that term is used in the statute." *Id.* at 214, 345 S.E.2d at 209-10; *see also Simon v. Triangle Materials, Inc.*, 106 N.C. App. 39, 43, 415 S.E.2d 105, 107 (concluding that "relief from pain constitutes 'relief' as that term is used in N.C. Gen. Stat. § 97-25"), *disc. review denied*, 332 N.C. 347, 421 S.E.2d 154 (1992).

In this case, Dr. Molnar testified that "with the pain and with the emotional problems that come with dealing with the pain, the wound care, the need for surgery," the emotional support of loved ones is necessary and important in the recovery process. Just as the psychological and emotional benefits to an employee that flow from monitoring his condition constitute "relief" as that term is used in the statute, *see Little*, 317 N.C. at 214, 345 S.E.2d at 209-10, under the specific circumstances presented here, the psychological and emotional benefits to Plaintiff that flowed from having the support of his parents while he was recovering in the hospital from devastating burns likewise constitutes "relief" as that term is used in the statute. *See id.* Defendants' argument is overruled.

Defendants finally argue that Rule 407(6) of the Workers' Compensation Rules of the Industrial Commission is only intended to allow for "reimbursement to the employee traveling to receive medical treatment." We disagree.

Pursuant to Rule 407(6), "[e]mployees shall be entitled to reimbursement for sick travel when the travel is medically necessary . . . ." While the rule limits the individual entitled to *receive* reimbursement for travel expenses to the employee, the rule does not limit the party *incurring* the travel expenses and, instead, requires reimbursement for travel when it is "medically necessary."

Accordingly, we conclude that the Commission's findings of fact support the Commission's conclusion that Plaintiff's mother's care was "medically necessary" and, thus, that Plaintiff was entitled

to reimbursement for his parents' "medical travel" in the amount of $1,311.56.

Defendants further argue that compensation for "sick travel" expenses of family members is not authorized under the Workers' Compensation Act or Workers' Compensation Rules. Because we conclude that under the facts of this case, Plaintiff's mother's care was "reasonably . . . required to effect a cure or give relief," N.C. Gen. Stat. § 97-2(19), we hold that Plaintiff was entitled to reimbursement for his parents' "medical travel" as such travel was a necessary medical cost incurred as a result of Plaintiff's injuries.

Defendants' argument is overruled.

### B. Attorney's Fees

[2] Defendants next argue that the Commission erred in awarding Plaintiff $5,000 in attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.

The decision whether to award or deny attorney's fees rests within the sound discretion of the Commission and will not be overturned absent a showing that the decision was manifestly unsupported by reason. *Bryson v. Phil Cline Trucking*, 150 N.C. App. 653, 656, 564 S.E.2d 585, 587 (2002). Pursuant to N.C. Gen. Stat. § 97-88.1,

> [i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them.

N.C. Gen. Stat. § 97-88.1 (2007).[3]

This statute applies to an original hearing and its purpose "is to prevent 'stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees.'" *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995) (*quoting Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990)), *disc. review denied*, 343 N.C. 516, 472 S.E.2d 26 (1996). An award of attorney's fees under this section requires the Commission to find that the original hearing "has been brought, prosecuted, or defended without reasonable ground." N.C. Gen. Stat. § 97-88.1.

---

3. N.C. Gen. Stat. § 97-88.1 is entitled "Attorney's fees at original hearing[.]"

Pursuant to N.C. Gen. Stat. § 97-88,

[i]f the Industrial Commission at a hearing on review[,] or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer[,] and the Commission or court[,] by its decision[,] orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.

N.C. Gen. Stat. § 97-88 (2007). This section applies to appeals to the Full Commission or appellate courts and allows an injured employee to move that his attorney's fees be paid whenever an insurer appeals the decision rendered in the original hearing and the insurer is required to make payments to the injured employee. *Troutman*, 121 N.C. App. at 54, 464 S.E.2d at 485. An award of attorney's fees under this section does not require the Commission to find that the appeal "has been brought, prosecuted, or defended without reasonable ground." N.C. Gen. Stat. § 97-88.1.

In this case, the Full Commission found that "[D]efendants pursued this appeal, in particular the issue of laser treatment, without reasonable ground"[4] and concluded that "[D]efendants pursued this appeal, in particular the issue of laser treatment, without reasonable ground, and further conclude[d] an award of $5,000 in attorney's fees to be proper. N.C. Gen. Stat. § 97-88.1."

The Commission had the authority to award Plaintiff attorney's fees under N.C. Gen. Stat. § 97-88.1 if it determined that Defendants "brought, prosecuted, or defended" the *original hearing* "without reasonable ground[.]" N.C. Gen. Stat. § 97-88.1. Moreover, the Commission had the authority to award Plaintiff attorney's fees under N.C. Gen. Stat. § 97-88 if Defendants *appealed* the decision rendered in the original hearing and Defendants were required to make payments to Plaintiff. *See* N.C. Gen. Stat. § 97-88. However, we are unable to determine from the Commission's finding of fact and conclusion of law whether the Commission awarded Plaintiff attorney's fees for the original hearing or for Defendants' appeal from that hearing. We are

---

4. The issue of Plaintiff's entitlement to laser treatment is not on appeal to this Court.

thus unable to determine whether the Commission made the proper findings of fact to support its conclusion, and whether the Commission's decision was manifestly unsupported by reason. *Bryson*, 150 N.C. App. at 656, 564 S.E.2d at 587. Our inability to determine whether the Commission awarded Plaintiff attorney's fees for the original hearing or for Defendants' appeal from that hearing is particularly difficult in light of the fact that the Full Commission agreed with Defendants' contention that Deputy Commissioner Gillen's award of disfigurement compensation was premature given the award of medical compensation for laser surgery and held an award under N.C. Gen. Stat. § 97-31(22) in abeyance "until the laser surgery has been performed and until any applicable healing time has passed." Accordingly, we remand this matter to the Full Commission for proper findings of fact and conclusions of law resolving Plaintiff's motion for attorney's fees.

AFFIRMED in part and REMANDED in part.

Judges CALABRIA and GEER concur.