TERRY CAWTHORN, Employee, Plaintiff v. MISSION HOSPITAL, INC., Self-Insured Employer, Defendant

No. COA10-748

(Filed 19 April 2011)

**1. Workers' Compensation— temporary total disability— incurred and future medical treatment**

The Industrial Commission did not err in a workers' compensation case by awarding ongoing temporary total disability benefits and all incurred and future medical treatment. The evidence supported a doctor's opinion that plaintiff's condition necessitating her surgery and causing her disability was the direct result of her 26 February injury and the three subsequent work-related aggravations.

**2. Attorney Fees— workers' compensation—stubborn unfounded litigiousness**

The Industrial Commission erred in a workers' compensation case by finding that the defense of this claim was reasonable and not stubborn, unfounded litigiousness where the findings of fact and conclusions of law ignored certain evidence and declined to award attorney fees under N.C.G.S. § 97-88.1. The case was remanded for a determination of the amount of attorney fees.

Appeal by Plaintiff and cross-appeal by Defendant from opinion and award entered 25 March 2010 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 30 November 2010.

*Ganly & Ramer, PLLC, by Thomas F. Ramer, for Plaintiff-Appellant.*

*Brooks, Stevens & Pope, P.A., by Joy H. Brewer and Ginny P. Lanier, for Defendant-Appellee/Cross-Appellant.*

BEASLEY, Judge.

Terry Cawthorn (Plaintiff) and Mission Hospital, Inc. (Defendant) both appeal from the Commission's opinion and award entitling Plaintiff to ongoing temporary total disability compensation and payment of related medical treatment, and finding Defendant did not deny Plaintiff's claim or defend the action without reasonable grounds. For the following reasons, we affirm the Commission's award of benefits but reverse its finding that Defendant acted reasonably in defending the claim and remand for a determination of attorney's fees under N.C. Gen. Stat. § 97-88.1.

On 20 October 2008, Plaintiff filed a Form 18 alleging that she sustained a specific traumatic incident, causing injury to her low back, while performing a post-surgical patient transfer in the course of her employment. Defendant denied the claim on the grounds that no specific traumatic event occurred and medical evidence failed to support a conclusion that Plaintiff's condition was caused by any work-related accident. Plaintiff thereafter requested a hearing seeking payment of compensation for days missed and medical expenses, and an assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 for Defendant's allegedly unfounded litigiousness. Defendant appealed the deputy commissioner's opinion and award finding Plaintiff suffered a compensable injury and that the denial of her claim was

unreasonable. The Commission reviewed the case and entered an opinion and award on 25 March 2010, affirming the deputy commissioner's award of temporary total disability compensation in large part but concluding that the defense of Plaintiff's claim was reasonable and rejecting any assessment of attorney's fees under § 97-88.1.

The Commission's findings of fact indicate that Plaintiff had worked for Defendant as a registered nurse for over twenty years and was regularly assigned to the women's operating room. On 26 February 2008, Plaintiff was asked to assist in post-surgical recovery and transport in a different department. As she helped transfer a patient from the gurney to the bed, Plaintiff felt a pain in her back, which continually increased throughout the evening. She reported the back injury to her supervisor, Beverly Caraway, the next morning and was instructed to go to Staff Health after completing an injury report on Defendant's computerized system, "RiskMaster." Plaintiff reported the claim as a workplace injury caused by moving a patient, which became worse during the last hour of her shift. Defendant's risk management staff reported that the claim fell under the "Workers' Comp SIR" insurance policy and listed the type of claim as "Medical Only." Plaintiff then saw Joshua Klaaren, a Staff Health physician's assistant, for a scheduled workers' compensation evaluation. He diagnosed Plaintiff with a low back and SI joint strain and restricted her to light duty work for two days. Ms. Caraway advised her supervisors, Samantha Farmer and Renee Carpenter, of Plaintiff's injury and work restrictions.

Despite remaining on restricted duty, Plaintiff re-injured her back on three subsequent occasions while conducting work-related tasks. After two subsequent lifting incidents on 7 March and 10 March 2008, Plaintiff was instructed to go to Staff Health, where she described low back pain, SI joint pain, and secondary spasms. Defendant had scheduled and reported the visit as a follow-up workers' compensation evaluation for Plaintiff's 26 February 2008 injury; thus, Mr. Klaaren believed that Defendant considered Plaintiff's condition to be related to that initial injury. On 11 April 2008, Plaintiff returned to Staff Health after informing Ms. Carpenter that the two occasions of re-aggravation had caused her condition to worsen. She described her continued right SI joint pain to Dr. Paul Martin, who noted Plaintiff's injury occurred on 26 February 2008 and was work-related. Dr. Martin sent Ms. Carpenter a follow-up email advising her of Plaintiff's continuing SI joint pain since 26 February. Following a third subsequent lifting incident on 20 May 2008, Plaintiff was again

directed to Staff Health, and Defendant's records likewise reported the visit as a scheduled, follow-up evaluation of Plaintiff's 26 February injury. The physician's assistant noted Plaintiff's discomfort over her bilateral sacral area, placed her on restricted duty, and recommended to Defendant's workers' compensation administrator, Mary Silver, that Plaintiff be authorized to see Dr. Daniel Hankley, a physical medicine and rehabilitation specialist.

At that point, Defendant's adjuster, Janet Mikos, became aware of Plaintiff's claim and interviewed her regarding the injury. During their 27 May 2008 conversation, Ms. Mikos advised Plaintiff that because neither she nor the patient she was assisting slipped, tripped, or fell, the 26 February incident did not qualify for workers' compensation coverage.

On 30 May 2008, Plaintiff was seen by Dr. Hankley, who stated that she aggravated her SI joint during the lifting and patient-assisting movements she had described and indicated that Plaintiff might have some referred pain from her L5-S1 disc. Nevertheless, Defendant denied Plaintiff's claim by letter dated 4 June 2008. On 12 June 2008, after continuing to have low back and bilateral SI joint pain, Plaintiff returned to Dr. Hankley, who observed more low back pain and right SI joint pain. He also noted Plaintiff's report of back pain and spasms from lifting a casserole out of the oven that were so severe she had to lie on the floor. Dr. Hankley's diagnosis and the restrictions he imposed remained unchanged. Plaintiff's pain, however, never resolved and she began to notice trouble with her left thigh at the end of June.

Neurosurgeon Dr. Ralph Loomis evaluated Plaintiff on 16 July 2008 and reported diffuse weakness in her left leg. Upon review of Plaintiff's MRI, Dr. Loomis diagnosed spondylolisthesis at L5-S1, lumbar stenosis and foraminal stenosis, low back pain, left leg weakness, and radiculopathy. Even after a nerve root block provided significant relief of Plaintiff's symptoms, she continued to work on light duty. On 9 September 2008, however, Defendant notified Plaintiff that light duty work was no longer being made available to her, and she was taken out of work as of that date. Plaintiff saw Dr. Loomis for a follow-up examination on 16 September 2008. His diagnosis remained unchanged, and Plaintiff was evaluated for a second opinion by Dr. Jon Silver on 22 October 2008. Dr. Silver noted the lifting injury aggravated the spondylolisthesis and opined that Plaintiff was incapable of performing her duties as a nurse for Defendant, opinions with which Dr. Loomis agreed. Dr. Silver thereafter referred Plaintiff to Dr.

CAWTHORN v. MISSION HOSP., INC.

[211 N.C. App. 42 (2011)]

Margaret Burke to undergo rehabilitation to try to avoid a surgical fusion, but on 1 December 2008, Dr. Loomis performed a lumbar interbody fusion at L5-S1. Defendant terminated Plaintiff on 3 December 2008.

Following surgery, Plaintiff continued under the care of Drs. Loomis and Burke, who indicated follow-up treatment and a functional capacity evaluation were required to determine her safe working limitations. Dr. Burke, however, stated that it would be months before Plaintiff would be released at maximum medical improvement. The Commission found that "Plaintiff has been and continues to be disabled from any employment" and concluded such was caused by "a specific traumatic incident of the work assigned on February 26, 2008, which was aggravated by [three later incidents] arising out of and in the course of her employment with [Defendant]" and resulted in injury to her low back. Defendant was required to pay ongoing temporary total disability compensation at a rate of $786.00 per week from 10 September 2008 until Plaintiff returns to work or further order of the Commission. The opinion and award also entitled Plaintiff to payment by Defendant for all related medical treatment related to the 26 February incident and resulting physical injuries and to attorney's fees under N.C. Gen. Stat. § 97-88, but not under § 97-88.1. Both parties gave timely notice of appeal.

## Defendant's Appeal

[1] Defendant argues for reversal of the Commission's decision to award ongoing indemnity benefits and future medical treatment, contending "that the competent evidence demonstrates that [P]laintiff's current condition, need for surgery, and resulting disability, is due to the non-work related casserole lifting event and that, but for this incident, [P]laintiff would be capable of engaging in gainful employment and would not require surgical intervention and future medical treatment."

On appeal from an opinion and award of the Commission, our task is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (internal quotation marks omitted). Where our "duty goes no further than to determine whether the record contains any evidence tending to support the finding," this

Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight." *Deese*, 352 N.C. at 115, 530 S.E.2d at 552 (internal quotation marks and citations omitted). However, conclusions of law are reviewed *de novo*. *Ramsey v. Southern Indus. Constructors, Inc.*, 178 N.C. App. 25, 30, 630 S.E.2d 681, 685 (2006).

The Commission's award of disability benefits was based, in part, on expert testimony that Plaintiff's 26 February 2008 lifting injury aggravated her pre-existing spondylolisthesis and that the three subsequent incidents on 7 March, 10 March, and 20 May 2008, further aggravated her condition to a point necessitating surgical intervention. While acknowledging that issues of credibility are left to the Commission, Defendant argues that the Commission erred in affording greater weight to the opinions of Drs. Loomis, Silver, and Burke—and less to Dr. Hankley—because the former are not supported by any competent evidence. Defendant continues that the only competent evidence demonstrates that Plaintiff's left-sided symptoms and radicular pain in her lower extremities were unrelated to her work injuries but, rather, were the direct result of the intervening casserole-lifting event. We disagree.

Where an injury is compensable only if it is one "arising out of and in the course of the employment," N.C. Gen. Stat. § 97-2(6) (2009), "the term 'arising out of' refers to the origin or causal connection of the accidental injury to the employment." *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 532 (1977).

> A subsequent injury is compensable if it is the direct and natural result of a compensable primary injury. As long as the primary injury is shown to have arisen out of and in the course of employment, then every natural consequence flowing from that injury likewise arises out of the employment. The subsequent injury is not compensable if it is the result of an independent, intervening cause.

*Nale v. Ethan Allen*, 199 N.C. App. 511, 515, 682 S.E.2d 231, 235 (2009) (internal quotation marks and citations omitted). Still, "the employment-related accident need not be the sole causative force to render an injury compensable" so long as competent evidence proves it to be a "causal factor." *Holley v. ACTS, Inc.*, 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003) (internal quotation marks and citations omitted); *see also Hoyle v. Carolina Associated Mills*, 122 N.C. App. 462, 466, 470 S.E.2d 357, 359 (1996) ("If the work-related accident 'contributed in some reasonable degree' to plaintiff's disability, she is entitled to compensation."). Moreover, the aggravation of a preexist-

ing condition which results in loss of wage earning capacity is compensable. *See Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) (holding work-related specific traumatic incident aggravating the plaintiff's severe preexisting back problems was a compensable injury). While Plaintiff bears the burden of proving causation by a preponderance of the evidence, if *any* competent evidence supports the Commission's findings of fact, we must accept them as true, *Everett v. Well Care & Nursing Servs.*, 180 N.C. App. 314, 318, 636 S.E.2d 824, 827 (2006), even if some evidence would support contrary findings, *Deese*, 352 N.C. at 115, 530 S.E.2d at 552-53.

Evidence "tending to show a proximate causal relation" is competent if it "take[s] the case out of the realm of conjecture and remote possibility[.]" *Everett*, 180 N.C. App. at 319, 636 S.E.2d at 828 (internal quotation marks and citation omitted). Only an expert can give competent opinion evidence as to causation in complicated cases, and "when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (internal quotation marks omitted). Still, medical opinions may be "based either on personal knowledge or observation or on information supplied him by others, including the patient," as "[s]tatements made by a patient to his physician for the purposes of treatment and medical information obtained from a fellow-physician who has treated the same patient are 'inherently reliable.' " *Booker v. Medical Center*, 297 N.C. 458, 479, 256 S.E.2d 189, 202 (1979) (internal citations omitted).

The Commission made several findings of fact addressing the status of Plaintiff's condition following all of the incidents at issue—the initial trauma, the subsequent work-related incidents, and the casserole-lifting event—and the cause thereof:

20. Plaintiff returned to Dr. Hankley on June 12, 2008, when he reported she had been working under restricted duty and her pain was getting worse, specifically noting more low back pain and right SI joint pain. He further noted plaintiff reported significant back pain and spasms after simply lifting a casserole out of the oven and that her spasms were so severe that she had to lie on the floor. These were the very same complaints plaintiff made to Staff Health on February 27, 2008. Dr. Hankley's diagnosis did not change and he reported her SI joint pain could be referred

from her low back and spondylolisthesis. Dr. Hankley recommended an MRI scan and left plaintiff's restrictions unchanged.

. . . .

23. On June 26, 2008, plaintiff returned to Dr. Hankley with continued complaints of severe low back pain and bilateral lower extremity pain, left worse than right. Dr. Hankely reviewed the MRI scan and diagnosed bilateral pars defect with Grade I spondylolisthesis and severe left and mild right neuroforaminal encroachment, which confirmed her earlier x-rays of May 20, 2008. No disc herniation or other cause for her leg pain was noted. Dr. Hankley continued work restrictions and recommend[ed] an epidural injection. Dr. Hankley did not indicate that plaintiff had sustained any new injury or intervening incident.

24. On July 16, 2008, plaintiff was evaluated by Dr. Ralph Loomis, a board certified neurosurgeon, at which time she again reported the onset of her symptoms in February when "she was assisting a patient move from a gurney to bedside post surgically and felt a little twinge in her back about 30 minutes later her low back began hurting" which got progressively worse over the next few hours. It was noted her pain never resolved and at the end of June she began to notice trouble with her left thigh. On exam Dr. Loomis reported diffuse weakness in her left leg and, after review of her MRI, diagnosed spondylolisthesis at L5-S1, lumbar stenosis and foraminal stenosis, low back pain, left leg weakness and radiculopathy. A nerve root block was recommended which was done on August 14, 2008, and which provided significant relief of her symptoms.

. . . .

27. Plaintiff was next evaluated for a second opinion by Dr. Jon Silver . . . on October 22, 2008, at which time she was noted on exam to have mild tenderness to palpation in the lower lumbar region with moderate left sciatic notch tenderness. . . . Based on his examination, Dr. Silver noted that the lifting injury aggravated the spondylolisthesis in that plaintiff already had some nerve root compression and this lifting injury irritated the root. Plaintiff was thereafter referred to Dr. Margaret Burke, a specialist in physical medicine and rehabilitation, to undergo rehabilitation to try to avoid a surgical fusion.

28. In a letter dated October 23, 2008, Dr. Loomis agreed with Dr. Silver's opinion that plaintiff's lifting injury aggravated her spondylolisthesis and that she was incapable of performing her duties as a nurse for defendant.

29. Plaintiff ultimately underwent a lumbar interbody fusion at L5-S1 on December 1, 2008 with Dr. Loomis. . . .

. . . .

31. Both Dr. Burke and Dr. Loomis are of the opinion, and the Full Commission finds, that plaintiff's back complaints beginning in February, 2008, were a direct result of her lifting incident on February 26, 2008, and her condition was further aggravated by her incidents of March 7, March 10, and May 20, 2008, all of which necessitated her surgery and resulted in her disability.

32. Mr. Klaaren, defendants' [sic] own Staff Health physician's assistant, indicated that plaintiff's complaints remained consistent and in his opinion her low back and SI complaints were the same complaints caused by her initial injury of February 26, 2008, and were treated as such during all evaluations by Staff Health personnel.

33. Dr. Hankley agreed that plaintiff's low back and bilateral SI joint pain and symptoms were referred from the aggravation of her spondylolisthesis. However, Dr. Hankley testified that such complaints somehow resolved without explanation. He believed that plaintiff's complaints of left legs [sic] symptoms were a result of picking up a casserole in late June 2008 and therefore her subsequent symptoms were unrelated to her injury. However, Dr. Hankley admitted that in reaching such opinion, he was not aware of plaintiff's post-injury consistent bilateral SI join pain and could not reach an opinion about the significance of such complaints.

34. Greater weight is afforded to the opinions of Dr. Burke, Dr. Silver and most specifically Dr. Loomis than to Dr. Hankley. Dr. Loomis actually performed plaintiff's surgery and was given the complete history of plaintiff's complaints from February 26, 2008 until his surgical recommendation.

Defendant contends that "Dr. Loomis' opinion is based on assumptions he made about plaintiff's symptoms following the 26 February 2008 incident that are not supported by the record, as well

as incorrect information provided by plaintiff herself, rather than the objective medical evidence documenting plaintiff's symptoms." Dr. Loomis testified to the significance of Plaintiff's bilateral SI joint pain arising in February 2008 and aggravated by specific incidents in March and May 2008: "Most patients with spondylolisthesis, affect both nerve roots left and right. So though it can occur, it would be rare for the patient to present with unilateral symptoms." Dr. Loomis also confirmed that patients often describe the symptoms as being bilateral at certain times and worse on one side than the other at other times: "They almost always say it's worse on one side or the other." Dr. Loomis found it significant that Plaintiff had reported experiencing bilateral SI joint pain on at least two occasions prior to seeing him.

While Defendant challenges Dr. Loomis' reliance on Plaintiff's own "subjective" reports of her injuries and symptoms, it is well-established that a patient's statements to her treating physician are reliable. *See, e.g., Booker v. Medical Center,* 297 N.C. at 479, 256 S.E.2d at 202 (1979); *Cherry v. Harrell,* 84 N.C. App. 598, 606, 353 S.E.2d 433, 438 (1987); *see also Adams v. Metals USA,* 168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (2005) ("The opinion of a physician is not rendered incompetent merely because it is based wholly or in part on statements made to him by the patient in the course of treatment or examination."). Moreover, Defendant fails to challenge several aspects of the opinion and award indicating Plaintiff was indeed having bilateral SI joint pain on several occasions prior to the casserole event, including findings of fact that: (1) Mr. Klaaren noted Plaintiff had spasms, low back pain, and "bilateral SI joint area pain" when he examined her the day after the 26 February injury; (2) Ms. Hawes at Staff Health saw Plaintiff on 22 May 2008 and noted Plaintiff's "discomfort over the bilateral sacral area"; and (3) after seeing Dr. Hankley on 30 May 2008 and Defendant's denial her claim on 4 June 2008, Plaintiff "continued to work in the operating room [on light duty] and continued to have low back and bilateral SI joint pain." As such, these findings are deemed supported by competent evidence, are binding on appeal, and further prove that Dr. Loomis was entitled to rely on Plaintiff's history of bilateral pain following the 26 February event in forming his opinion as to causation.

Dr. Loomis went on to testify that the bilateral SI joint pain would be considered referred pain from her spondylolisthesis grade one L5-S1. He opined that the cause of her condition, which led him to recommend surgery, was Plaintiff's "lifting event where she helped move

a patient from a gurney to a bedside in February of '08." This opinion was based on Plaintiff's history of bilateral SI problems; her neurologic exam, MR scan, and cystometrogram; and her responses to conservative management and steroidal injection. Dr. Loomis also flatly rejected having any different opinion if Plaintiff "was complaining of left-sided low back and leg symptoms greater than right," noting that "it's affected on both sides." When pressed by defense counsel that Plaintiff's symptoms reported in late June were "substantially different than those she reported prior to [the date she discussed lifting a casserole]," Dr. Loomis would not agree that "a left thigh weakness and radiation [were] different than SI joint pain." Rather, he believed the "SI joint pain [was] radiating pain. It's referred pain." He repeated that even if Plaintiff "specifically had denied radiating symptoms prior to that date[,] . . . [i]t would not change [his] opinion," clearly stating: "I think it was from the original [incident]."

Defendant, however, disputes this evidence as incompetent—and simultaneously challenges finding of fact 34 that Dr. Loomis "was given the complete history of plaintiff's complaints from February 26, 2008" before recommending surgery—by arguing that "he did not review any of plaintiff's prior medicals" or "have any firsthand knowledge of her symptoms from February of 2008 until July of 2008" when he treated her. This argument ignores that, in soliciting Dr. Loomis' opinion as to causation, counsel for both parties apprised him of all the information Defendant now contends the expert needed, but lacked, in attributing Plaintiff's disability to her 26 February 2008 work injury rather than the casserole-lifting event:

> [Plaintiff's counsel] [I]f . . . the medical records had indicated [Plaintiff] had bilateral SI joint problems in February, again bilateral SI joint problems May 22nd, that she saw Dr. Hankley on . . . May 30th for right low back and SI joint problems, according to his notes; and that she went back to see him approximately a week later, and reported in his notes chief complaint low back pain, right SI pain; and also says "she has pain over the right SI area, but also having more and more low back pain, this is actually worse on the left side." Then she recites that she was having difficulty doing her job at Mission Hospital, and that Dr. Hankley stated in fact she stated she was lifting a heavy — lifting a casserole at home and felt back pain; had spasms and had to lay on the floor. Does that sound like something that dramatically altered her medical course?

CAWTHORN v. MISSION HOSP., INC.

[211 N.C. App. 42 (2011)]

[Dr. Loomis] I don't think so, no.

[Plaintiff's counsel] I mean the fact she recited she lifted a casserole?

[Dr. Loomis] No.

Dr. Loomis further indicated that fact would neither "affect [his] evaluation and recommendation for treatment of [Plaintiff]" nor alter his "opinions that [he had] stated with regard to what caused her problems." Acknowledging that he did not have firsthand knowledge of Plaintiff's symptoms prior to July 2008, Dr. Loomis testified that he did not only rely on Plaintiff's reports to him but also on his practical experience that SI joint pain can be referred from the L5-S1 level. He agreed that Plaintiff's left-sided radicular symptom and left leg weakness indeed contributed to his ultimate decision to perform surgery but again emphasized that his opinion remained unchanged even when asked by defense counsel to assume the following factors: (1) Plaintiff was diagnosed with a lumbar strain and history consistent with secondary spasm on 27 February 2008, the day after the original incident; (2) her pain on 10 March 2008 was localized to the right SI joint and during subsequent evaluation by Dr. Hankley on 30 May 2008, she reported "SI joint pain with no radiation to her lower extremities, no numbness, tingling or weakness," leading to a diagnosis of "right SI joint pain and grade one spondylolisthesis L5 on S1 with probable L5 spondylosis"; (3) Plaintiff's chiropractor documented right SI joint pain from March to early June 2008 but in late June noted severe left buttock and anterior thigh pain; and (4) Plaintiff reported more low back pain specifically on the left side to Dr. Hankley on 12 June 2008, the date she discussed lifting a casserole out of the oven, and subsequently observed "severe low back pain radiating into her posterior and anterior thigh on the left side." Thus, prior to restating his opinion that Plaintiff's current condition was caused by the 26 February injury, Dr. Loomis was repeatedly presented with the very "objective medical evidence documenting plaintiff's symptoms" that Defendant suggests was necessary to make his testimony competent. Moreover, Dr. Loomis was given every opportunity to agree that the casserole-lifting event was an intervening event, causing Plaintiff's radicular symptoms and left leg pain entirely independently of the 26 February lifting injury, but maintained his position that her current condition flowed from the original incident, such that Plaintiff's left side and radicular injuries likewise arose out of her employment.

We conclude the evidence above provides ample, competent support for the Commission's findings accepting Dr. Loomis' opinion that

Plaintiff's condition, necessitating her surgery and causing her disability, was the direct result of her 26 February injury and the three subsequent work-related aggravations. Where Dr. Loomis' competent opinion testimony is, in itself, sufficient to substantiate the Commission's findings regarding causation, we need not review Defendant's challenges to the findings related to the testimony of Drs. Burke and Silver. Moreover, we do not engage in any review of the Commission's decision to afford particularly greater weight to Dr. Loomis' opinion while discounting Dr. Hankley's belief that Plaintiff's symptoms demanding surgery were unrelated to the original injury. The Commission's conclusion that Plaintiff's current medical condition was causally related to her compensable injuries is likewise supported by these findings of fact. Therefore, we affirm the Commission's award, including ongoing temporary disability compensation until Plaintiff returns to work or further order by the Commission and all incurred and future medical expenses related to treatment of her condition.

## Plaintiff's Appeal

[2] Plaintiff argues that the Commission erred in finding that "[t]he defense of this claim was reasonable and not stubborn, unfounded litigiousness," where the findings of fact and conclusions of law allegedly ignore certain evidence specified in Plaintiff's brief, and in declining to award Plaintiff attorney's fees under N.C. Gen. Stat. § 97-88.1. Pursuant to this statute, "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1 (2009). "This statute applies to an original hearing and its purpose is to prevent stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." *Price v. Piggy Palace*, ⸺ N.C. App. ⸺, ⸺, 696 S.E.2d 716, 723 (2010) (internal quotation marks and citation omitted).

We review an award or denial of attorney's fees under N.C. Gen. Stat. § 97-88.1 pursuant to a two-part analysis. *Meares v. Dana Corp.*, 193 N.C. App. 86, 93, 666 S.E.2d 819, 825 (2008). "First, '[w]hether the [defendant] had a reasonable ground to bring a hearing is reviewable by this Court *de novo*.' " *Id.* (quoting *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 50-51, 464 S.E.2d 481, 484 (1995)). If this Court concludes that a party did not have reasonable ground to bring or

defend a hearing, then we review the decision of whether to make an award and the amount of the award for an abuse of discretion. *Troutman*, 121 N.C. App. at 54-55, 464 S.E.2d 486. In conducting the first step of the analysis, we consider the evidence presented at the hearing to determine the reasonableness of a defendant's claim. *See Cooke v. P.H. Glatfelter/Ecusta*, 130 N.C. App. 220, 225, 502 S.E.2d 419, 422 (1998) (instructing that "the Commission (and a reviewing court) must look to the evidence introduced at the hearing" to determine whether a hearing has been defended without reasonable ground). As such, "[t]he burden [is] on the defendant to place in the record evidence to support its position that it acted on 'reasonable grounds.'" *Shah v. Howard Johnson*, 140 N.C. App. 58, 64, 535 S.E.2d 577, 581 (2000). Mindful that "the test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness," *Cooke*, 130 N.C. App. at 225, 502 S.E.2d at 422 (internal quotation marks and citations omitted), we conclude, as discussed below, that Defendant's denial of Plaintiff's claim and defense of the hearing was not reasonable.

The Commission's opinion and award contains findings of fact, which have not been challenged on appeal, detailing Plaintiff's February 2008 injury and Defendant's undisputed knowledge thereof, including: (1) while Plaintiff was assisting in post-surgical patient transfer on 26 February 2008, she "leaned across the bed and reached out her hand . . . felt a pain in her back"; (2) her back pain became more severe after finishing the patient transfer during the remaining hour of her shift; (3) immediately upon arrival the next morning, she "reported the back injury of the previous day to her supervisor," Ms. Caraway, and obliged Ms. Caraway's instructions to complete an injury report on RiskMaster; (4) Plaintiff "reported the claim as a workplace injury[,] . . . noted that the cause of her injury was moving a patient," and described her pain as becoming "worse during the last hour of her shift"; (5) Defendant's own "risk management staff then reported that the claim fell under the 'Workers Comp SIR' insurance policy"; (6) when Mr. Klaaren restricted Plaintiff to light duty on 27 February 2008, Ms. Caraway advised her own supervisors "of plaintiff's injury and limited work status," and "Ms. Farmer confirmed at the hearing before the Deputy Commissioner that Ms. Caraway advised her of plaintiff's report of injury shortly after the incident occurred"; (7) Plaintiff reported three precise incidents thereafter— including holding a large abdominal apron of a 300-pound patient on 7 March 2008, "attempting to remove the base from an operating

room table" on 10 March 2008, and "attempting to move a Bookwalter ring weighing approximately 50 pounds" on 20 May 2008—which re-aggravated her back injury; (8) each of Plaintiff's Staff Health visits described in the record was scheduled and reported by defendant as a "workers' compensation evaluation" or "a follow-up workers' compensation evaluation for plaintiff's February 26, 2008 injury"; (9) Ms. Carpenter, Defendant's operating room director, was informed of Plaintiff's condition several times, including: by Ms. Caraway right after the initial injury; by email from Plaintiff on 13 March 2008, detailing her 7 and 10 March re-injuries; and on 11 April 2008 by Dr. Martin, who noted Plaintiff's date of injury as 26 February 2008, described her injury as "work related," and "advis[ed] [Ms. Carpenter] of plaintiff's continuing SI joint pain since [that date]"; and (10) "Plaintiff reported her injury assisting a patient, followed by severe low back pain and SI joint pain 30 minutes later, as well as her re-aggravation a week later" to Dr. Hankley, who "stated that plaintiff aggravated her SI joint during her two lifting and patient assisting movements which 'continues to aggravate it while she is doing full duty.' "

Notwithstanding these facts, Defendant, through its adjuster Ms. Mikos, informed Plaintiff that it was denying her claim because she had not reported an accident or specific traumatic injury.

> Under the specific traumatic incident provision of section 97-2(6) of the North Carolina General Statutes, a plaintiff must prove an injury at a judicially cognizable point in time. N.C. Gen. Stat. § 97-2(6) (2003). The term "judicially cognizable" requires a showing by plaintiff which enables the Industrial Commission to determine when, within a reasonable period, the specific injury occurred.

*Goforth v. K-Mart Corp.*, 167 N.C. App. 618, 622, 605 S.E.2d 709, 712 (2004) (internal quotation marks omitted). The Commission made the following pertinent findings of fact:

> 14. On or about May 27, 2008, Janet Mikos, defendant's adjuster, became aware of plaintiff's claim and interviewed plaintiff about her February 26, 2008, incident. Ms. Mikos had been working for defendant for approximately one month. Ms. Mikos did not record the conversation with plaintiff, but entered a summary of her notes of the conversation into defendant's claims management system, Risk Master, on May 27, 2008. Ms. Mikos had access to plaintiff's initial February 27, 2008, Risk Master report in which plaintiff reported the cause of her injury was moving a patient and in a separate section noted her pain became more severe in

the last hour of her shift. Ms. Mikos was further aware that this claim had been timely and properly reported and entered into the Risk Master system as a "medical only" workers' compensation claim.

15. During their conversation on May 27, 2008, plaintiff explained to Ms. Mikos that she had been asked to assist in transferring a post-surgical patient to an upstairs room, which was not her regular job. Plaintiff reached out across a bed and let the patient grab her arm to assist the 300-pound patient transfer into a bed, at which time she felt pain in her low back. Plaintiff also told Ms. Mikos that she returned downstairs to her normal work station, sat at a desk during the last hour of her shift, and had increasing back pain until she left for home. . . .

16. Ms. Mikos advised plaintiff that since neither she nor the patient she was assisting slipped, tripped or fell, such incident did not qualify for workers' compensation coverage. This statement is confirmed by Ms. Mikos's Risk Master entry which reported "there is no specific traumatic event, no fall, no trip, no stumbling o[f] either the clmt [claimant] or any patient that she may have been assisting."

17. By letter to plaintiff dated June 4, 2008, defendant denied plaintiff's claim based on that portion of the Risk Master report which reported plaintiff's lower back started hurting during the last hour of her shift; Ms. Mikos' mistaken opinion that because plaintiff did not report a trip or fall, no injury by accident occurred; and because the initial Staff Health report stated that plaintiff experienced no clear inciting event. Defendant reached the decision to deny the claim without consulting or interviewing plaintiff's supervisor Ms. Caraway, who left defendant's employment in June 2008. Defendant acknowledged on their [sic] Form 19 that Ms. Caraway first knew of plaintiff's injury on February 27, 2008.

Notwithstanding the undisputed evidence that on 27 February 2008, Plaintiff reported the cause of her injury as moving a patient; that Ms. Mikos had access to this initial RiskMaster report and was further aware that the claim had been timely and properly reported and entered into the system as a workers' compensation claim; that Plaintiff reported both the initial and subsequent, re-aggravating "inciting events" to her supervisors and Staff Health; that Defendant's own records documented each of Plaintiff's visits to Staff Health as part of continuous treatment from the 26 February injury; and that

during Ms. Mikos' own conversation with Plaintiff, Plaintiff fully detailed her initial pain from assisting with patient transfer and the three specific subsequent incidents, Ms. Mikos advised Plaintiff that her claim was being denied because there was no specific traumatic event.[1]

Our review of other testimony and the exhibits introduced at the hearing confirms that Defendant intentionally disregarded information identifying not just one, but four, clearly compensable work-related injuries sustained by Plaintiff and that its denial of compensation was not based on any mistaken opinion held by Ms. Mikos. In deciding to deny Plaintiff's claim, even after reviewing the RiskMaster report and hearing first-hand accounts from Plaintiff regarding her initial and aggravating injuries, Ms. Mikos made no effort to confirm Plaintiff's report of injury from moving a patient with Ms. Caraway. There was no attempt to consult with Mr. Klaaren, who treated Plaintiff after the original injury and subsequent incidents and testified to his opinion that each of the 26 February, 7 March, 10 March, and 20 May 2008 injuries were all valid workers' compensation claims. And although Ms. Mikos was clearly aware of the subsequent, "specific traumatic" lifting incidents, she completely neglected to look into them further. Thus, when Ms. Mikos advised Plaintiff by letter on 4 June 2008 that her claim was being denied solely "based on [Defendant's] investigation [which revealed] there was no 'accident,'" no honest investigation had in fact taken place. Plaintiff emailed Ms. Mikos on 19 July 2008 for reconsideration of her claim, reminding the adjuster that Staff Health employees and Dr. Hankley had all reported Plaintiff's back pain as work-related injury. Ms. Mikos responded by email on 25 July 2008, wherein she reiterated Defendant's position that "there was no 'specific traumatic accident'" and also further misstated the facts by writing:

---

1. Even assuming Ms. Mikos did make a mistake in deciding what was required to trigger workers' compensation coverage, the Commission's finding of fact 17 regarding Ms. Mikos' mistaken beliefs would not support the Commission's conclusion that the defense of Plaintiff's claim was reasonable. This Court has held that a denial of benefits based on misapplication or unawareness of the law is not reasonable and justifies the imposition of sanctions under § 97-88.1. *See Troutman,* 121 N.C. App. at 52, 464 S.E.2d at 484 ("Defendant's ignorance of a 1986 North Carolina case directly on point provides no support for their contention that grounds for requesting a hearing in 1991 were reasonable. Such a construction would encourage incompetence and thwart the legislative purpose of N.C.G.S. § 97-88.1."); *see also Goforth,* 167 N.C. App. at 623-24, 605 S.E.2d at 713 (affirming Commission's sanction of attorney's fees under § 97-88.1 where the employer's causation argument, that plaintiff's injury was the result of his preexisting back condition, was unsupported by North Carolina law).

CAWTHORN v. MISSION HOSP., INC.

[211 N.C. App. 42 (2011)]

We also have the issue of late reporting. Per my conversation with Renee Carpenter, she was not aware of the injury until May 22, 2008 when the event was entered into our claim handling system (RiskMaster). A thorough and immediate investigation is necessary to fully document the file to support any compensability decision. We were prejudiced by the passing of three months.

Both statements as to when Ms. Carpenter became aware of Plaintiff's injury and when the event was entered into RiskMaster are false. In fact, Defendant acknowledged in its Form 19 that the "[d]ate [Defendant] or the supervisor [Ms. Caraway] first knew of [the] injury" was "2/27/08." Even still, Defendant maintained its position that its denial of the claim was based on Plaintiff's failure to report any specific accident and its unawareness of such incidents until 27 May 2008, answering Plaintiff's interrogatories: "[D]efendants [sic] contend that plaintiff did not relate her back injury to moving a patient until after the denial of her claim." This position seems further implausible where the RiskMaster report describing the 26 February incident ascribes "Cause Code: MP Moving Patient" to the event complaint of by Plaintiff.

While it is reasonable for "an employer with *legitimate* doubt regarding the employee's credibility, based on *substantial evidence* of conduct by the employee inconsistent with his alleged claim" to defend a hearing, *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 664, 286 S.E.2d 575, 576 (1982) (emphasis added), the overwhelming evidence in this case—not just from Plaintiff but also from Staff Health personnel, Defendant's own internal records, and other medical experts treating Plaintiff—leaves no room for any legitimate doubt. Rather, Defendant's intentional disregard of information indisputably known to it in this matter and its affirmative failure to investigate obvious avenues that would have clarified the events surrounding each of Plaintiff's reported injuries were certainly not reasonable. Not only was its defense of this matter unreasonable, but the tactics in which Defendant engaged constituted a conscious attempt to mislead Plaintiff as to her entitlement to workers' compensation benefits. Accordingly, we conclude that the Commission erred in finding Defendant's denial of benefits and defense of this action reasonable and remand for a determination of the amount of attorney's fees to be awarded Plaintiff under § 97-88.1.

We affirm the Commission's decision awarding Plaintiff ongoing temporary total disability benefits until further order. We reverse the

portion of the opinion and award finding Defendant acted reasonably in this matter and remand for the imposition of attorney's fees under N.C. Gen. Stat. § 97-88.1 to be taxed against Defendant.

Affirmed in part; Reversed and remanded in part.

Judges BRYANT and STROUD concur.